[Crim No. 3241. Second Appellate District, Division One.—October 19, 1939.]

THE PEOPLE, Respondent, v. CLARENCE THOMAS, Appellant.

Gladys Towles Root for Appellant.

Earl Warren, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

DORAN, J.—Defendant, Clarence Thomas, was charged by information with the crime of robbery committed on January 20, 1939. A jury returned a verdict of robbery of the second degree. The appeal is from the judgment of conviction and from the order denying the motion for a new trial.

The facts as revealed by the record are as follows: On January 20, 1939, at about 11:00 o'clock in the evening, three negroes appeared at the liquor store of the complaining witness, Vito Balenzano, in Los Angeles, and requested a pint

of wine.  There was some discussion among the men as to the kind of wine desired.  The store was well lighted and Balenzano saw the three men plainly.  He testified that the defendant, Clarence Thomas, was standing on the side, watching where the money was being placed.  The men left the store, returning about 10 or 15 minutes later, at which time they requested another pint of wine.  Balenzano recognized the men as the ones who had been there previously.  While filling the pint bottle, he turned his head and again saw defendant Thomas facing toward the money box.  One of the other men (who was not present at the trial) at this time "caught" Balenzano from the back, pulled him to the rear of the store and told him to lie down.  All three of the men were by then in the back of the store; the complaining witness was "banged down" and his pockets were searched, at which time a watch of the value of $65 and a knife were taken from him.  The money box containing about $35 was also stolen.  Balenzano was then struck in the face, and the three men ran out of the store.

Balenzano further testified that some eight or ten days later while he was on his way to the bank he saw defendant Thomas on the street and recognized him as one of the three men who had been in the store on the night of the robbery; that he called the police but by the time they were able to arrive the defendant Thomas was gone; that some ten days thereafter he again saw the defendant Thomas, who was walking on a downtown street in Los Angeles, and at this time he had the defendant arrested for robbery.

One Bert Thomas, a witness for the People, testified that he had arrived at the liquor store at around 11 o'clock on the evening of January 20, 1939; that the defendant and his codefendant, Tommie Williams, were standing in front of the wine barrels; that Williams dealt him a blow in the stomach and shoved him out into the street, and that he saw three men run out of the store.

In support of an alibi sought to be established, a witness for the defense, Belle Anderson, testified that she was born in Chicago, Illinois, and that her birthday was January 20th; that a Miss Seth Williams, whom she had known for some six months, gave a party in her honor at the cocktail lounge of the Dunbar Hotel on January 20, 1939, at which party defendant Thomas and his wife were present; that she had

known the defendant Thomas for about a year but that she had not met previously the other two men comprising the rest of the party; that she saw the defendant Thomas at 9:30 o'clock that evening and that he remained with the party until the bar closed, which was at 2 o'clock the following morning. Two other members of the birthday party testified to having seen Thomas at the cocktail bar from 9:30 o'clock on the evening of January 20, 1939, until 2 o'clock the following morning.

■ On appeal it is urged that the court erred in the admission of certain evidence: namely, "a reading of the testimony given by the witness" (Bert Thomas) "at the preliminary hearing".

Upon cross-examination, the witness Bert Thomas was asked whether the three men whom he saw in the store were colored or white. The witness answered that they were colored. The defendant's counsel then asked the witness the following question:

"Q. Calling your attention to page 19 . . . of the preliminary examination testimony, I want you to start reading line 13 and read to line 16. (Handing transcript to witness.) I will ask you if you were asked the following question and made the following answer: 'Q. Could you see whether or not they were white or colored men? A. No.' Did you so state at the preliminary examination?

"A. I am not sure."

On redirect examination the district attorney asked the witness the following:

"Q. (By Mr. Stahlman): Now, the question is,—do you have the question in mind: 'Q. Could you see whether or not they were white or colored men? A. No,' and I will ask you if that did not refer to the time they were going around the corner, when they were running, wasn't that it?

"A. Yes, sir."

Defendant's counsel objected to the question as leading and suggestive, which objection was overruled. Appellant complains that "There was no proper foundation laid for the questions to be used as impeachment, and they were not explanatory of any matter brought out on cross-examination."

There was no merit to the objection at the trial, nor is there any merit to the contention on appeal as a result of the court's ruling.

In connection with defendant's effort to impeach the witness Bert Thomas the district attorney sought to show, and did in fact show, by reference to the transcript, that the witness Bert Thomas had upon numerous occasions during his testimony at the preliminary hearing testified that the men were "colored". Whether such a showing should have been permitted upon redirect examination of the witness or upon rebuttal, was a question addressed to the discretion of the trial court.

During the examination of the witness Bert Thomas the district attorney remarked, "I wish to—I am surprised counsel will try to confuse the issue here." The remark was assigned as misconduct, and a request for an instruction to disregard it was denied. Appellant complains bitterly of the ruling and of the alleged prejudicial character of the remark. The complaint is trivial.

At the noon recess, after the testimony of Belle Anderson was given, she was taken to the office of the district attorney and questioned as to the date of her birthday. Later, Miss Anderson was recalled to the stand by defense counsel, at which time she was questioned, outside of the presence and hearing of the jurors, relative to that which transpired during her visit to the office. She testified, in effect, that the prosecuting attorney had stated that he wished to ask her the correct date of her birthday; that he told her he did not think that her birthday was January 20th; that it would be necessary for him to check the records as to her birthday and that if she was not telling him the truth she would get into "trouble"; that she thought the matter over and then told him that her birthday was January 12th; that she wrote down the date of her birthday as January 12th on a slip of paper and signed her name to it; and that she did this because she was frightened. Upon cross-examination by the district attorney following this testimony, Miss Anderson stated that her true birthday was January 20th. In reply to the question by the district attorney: "Now, you say now the reason you told me is that you were scared, but it is on the 20th, is that your statement at this time?" the witness answered: "Yes, my birthday is on the 20th, but other people questioned me— I did not know who to tell the truth to, because so many people ask you everything." Miss Anderson's signed statement

was thereafter offered and admitted in evidence and read to the jury.

It is urged that the above-described conduct of the district attorney amounted to an unwarranted tampering with the defendant's witness, which, together with the district attorney's argument regarding an alibi defense, was highly prejudicial. The record reveals that the jury had the benefit of all of the facts connected with the incident and a full opportunity to consider the testimony of the witness in the light thereof. It cannot be assumed, under the circumstances, that any prejudice resulted in the absence of a more substantial showing than the record discloses.

The jury was properly and adequately instructed on all issues, and the evidence supports the verdict.

There being no prejudicial errors in the record, the judgment and the order appealed from are affirmed.

York, P. J., and White, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 16, 1939. Houser, J., voted for a hearing.